The document below is hereby signed.

Signed: October 12, 2010.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ROBIN T. CAMPBELL-BENNETT, | ) | Case No. 09-00224 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| BRYAN S. ROSS, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 10-10037 |
| J.P. MORGAN CHASE BANK, | ) | |
| N.A., | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendant. | ) | |

## MEMORANDUM DECISION RE MOTION TO DISMISS

The plaintiff Ross, trustee of the estate of the debtor under chapter 7 of the Bankruptcy Code (11 U.S.C.), brought this adversary proceeding under 11 U.S.C. § 544 to avoid (or, alternatively, to declare that his rights are superior to) a deed of trust the debtor granted to the defendant, J.P. Morgan Chase

Bank, N.A., prepetition.[1]  In turn, Chase has moved to dismiss the adversary proceeding on the basis of the statute of limitations.  Specifically, it contends that the adversary proceeding is barred by 11 U.S.C. § 546(a)(2), which provides in relevant part that a proceeding under § 544 must be brought prior to the closing of the bankruptcy case.  As discussed below, I conclude that reopening of a bankruptcy case does not vacate the order closing the case, and thus does not remove the bar of § 546(a)(2).  Accordingly, the motion will be granted.

I

The debtor, her husband, and her mother jointly own residential real property located at 1424 Independence Avenue, SE, Washington, D.C.  On or about October 24, 2008, the three owners executed a deed of trust on the property to secure payment of a promissory note in the amount of $275,000 (plus interest and other charges that might come due under the promissory note or the deed of trust).  Chase now holds the promissory note by way of assignment.  The deed of trust was never recorded.  It is based on the lack of recordation that the trustee invokes § 544.

The debtor commenced her bankruptcy case on March 19, 2009.  The debtor's schedules provided sufficient information for the trustee to be alerted to the existence of the deed of trust.  On her Schedule A - Real Property, she listed her real property as a

---

[1] If he succeeds in avoiding the deed of trust, Ross also seeks to have that lien preserved for the benefit of the estate under 11 U.S.C. § 551.

residence jointly owned by the debtor, her husband, and her mother, and as subject to a secured claim in the amount of $275,000. On her Schedule D - Creditors Holding Secured Claims, she listed the original holder of the promissory note as a creditor holding a claim incurred on the date of "10/24/2008" and under the column "AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL" she listed the amount of the claim as $275,000, and she listed no amount as being unsecured under the column "UNSECURED PORTION, IF ANY." Accordingly, the trustee was alerted that there was a deed of trust on the property. He could have investigated whether that deed of trust had been recorded.

The trustee points to the debtor's Statement of Financial Affairs. Question 10(a) stated:

> List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

The debtor responded by checking the "None" box. The trustee argues that this is the logical place in which the debtor should have disclosed the October 24, 2008 execution of the deed of trust. But the trustee's § 544 claims do not turn on *when* the deed of trust was executed. Instead, those claims turn on the lack of recordation of the deed of trust, and they would be unaffected by when the deed of trust was executed.

Accordingly, this was a case in which the debtor fully disclosed her interest in real property and the deed of trust on the property, and in which the trustee elected not to investigate whether the deed of trust had been recorded. He then proceeded to report that there were no assets to administer for the benefit of unsecured creditors and to request that the case be closed. The case was then closed on July 6, 2009. More than a year later, on July 7, 2010, Ross filed a motion to reopen the case in order to pursue this adversary proceeding. The motion was granted the next day.

II

The court in *Moyer v. ABN Amro Mortgage Group, Inc. (In re Feringa)*, 376 B.R. 614 (Bankr. W.D. Mich. 2007), correctly reasoned that an order reopening a case under 11 U.S.C. § 350, standing alone, does not suffice to remove the bar of § 546(a)(2) against pursuit of an avoidance action, but that a motion under Fed. R. Bankr. P. 9024 to vacate the order closing the case "provides the means for a trustee to still commence an avoidance action in a reopened case if, for example, that case had been previously closed because of mistake or inadvertence." *Id.* at 622 Unless Ross obtains an order under Rule 9024 vacating the order closing the case, he is barred from pursuing his § 544 claims.

Ross disagrees. He points to decisions holding that the word "closed," as set forth in 11 U.S.C. § 546(a)(2), means "properly and finally closed," *see, e.g., Gross v. Petty (In re*

*Petty)*, 93 B.R. 208, 212 (9th Cir. B.A.P. 1988); *Schroeder v. First Union Nat'l Bank (In re Schroeder)*, 173 B.R. 93, 94 (Bankr. D. Md. 1994), *rev'd on other grounds*, 182 B.R. 723 (D. Md. 1995), and argues that vacating the order closing the case is unnecessary in order for him to pursue his claims under § 544. A similar argument was rejected in *In re Feringa*, 376 B.R. at 622 n.8, and sound reasons exist to reject it here as well. An order reopening a case does not address whether the closing of a case should be disregarded for purposes of § 546(a)(2) or any other provision. *Olson v. Aegis Mortg. Corp. (In re Bloxsom)*, 389 B.R. 52, 60 (Bankr. W.D. Mich. 2008) ("[T]he entry of [a reopening] order would still leave unaltered the prior order entered under Section 350(a) that had caused the case to be closed in the first place."). A motion to reopen is not subject to the more rigorous standard applicable to a Rule 9024 motion to vacate the order closing the case in order to undo the effects of that order. *See Woods v. Kenan (In re Woods)*, 173 F.3d 770, 778-79 (10th Cir. 1999); *In re Bloxsom*, 389 B.R. at 60. Reopening a case is ministerial, can be pursued ex parte and without notice, and has no independent legal significance as to the merits of litigation pursued in the reopened case. *In re Bloxsom*, 389 B.R. at 60; *In re Feringa*, 376 B.R. at 622.

                                III

Ross argues in the alternative that he has met the standards for Rule 9024 relief. Treating that argument as a motion for

Rule 9024 relief, however, I conclude that Rule 9024 relief is inappropriate.[2]

Ross argues that the unrecorded status of the deed of trust was not discovered until after the case was closed and that the facts establish inadvertence, mistake, and newly discovered evidence. Rule 9024 incorporates Fed. R. Civ. P. 60(b)(1) and (2) which, respectively, permit a court to relieve a party from a final order for "mistake, inadvertence, surprise, or excusable neglect," or "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Ross argues:

> Neither the Trustee nor, apparently, the Debtor knew about the unrecorded deed during the pendency of the Chapter 7 case. Had the Debtor disclosed the recent refinancing in response to question 10 on her Statement of Financial Affairs, it may have caused the Trustee to examine the title. However, the Debtor never made that disclosure and the Trustee would have no inclination to review the documents recorded in the chain of title connected to her real property.

Opposition at 8.

Question 10 of the Statement of Financial Affairs requested the debtor to disclose certain transfers made within two years of

---

[2] Chase argues that Ross should be required to file a formal Rule 9024 motion if he wishes to invoke Rule 9024, but because it is plain that Rule 9024 relief is unavailable, I will not require a formal Rule 9024 motion and double the court's work. It is apparent that Ross has set forth all of the facts supporting his argument that Rule 9024 relief is appropriate. If not, he can move under Rule 9023 to vacate the dismissal of this adversary proceeding, and request that the adversary proceeding be held in abeyance pending disposition of a formal Rule 9024 motion in the main case advancing facts he has not presented in opposition to Chase's motion.

the commencement of the case, but Ross's § 544 claims do not turn on *when* the deed of trust was granted, but instead on its being unrecorded.  On her Schedules A and D, the debtor scheduled the real property, disclosed the deed of trust on the real property, and even disclosed the date of the granting of the deed of trust. Ross thus had information sufficient to alert him to the need to research whether the deed of trust had not been recorded such as to support a § 544 claim.  The proximate cause of Ross's failure to conduct such research was not any failure on the part of the debtor accurately to answer Question 10 of the Statement of Financial Affairs.

Ross made a deliberate decision to report this as a case in which there were no assets to administer for the benefit of creditors, and that the case was ready to be closed.  He fares no better than the trustee in *Grassmueck v. WFS Financial, Inc. (In re Cortez)*, 255 B.R. 324 (Bankr. D. Or. 2000), who filed a no-asset report without first having completed his investigation into whether there were any avoidable transfers.  As in *In re Cortez*, there was no mistake or inadvertence within the meaning of Rule 60(b)(1).  Instead, there was an intentional decision to file a no-asset report without having completed any investigation into whether the deed of trust had been recorded.  Although it may have been a "mistake" for Ross to fail to inquire whether the deed of trust had been recorded, that was a mistake of his own doing, and is not the type of mistake or inadvertence addressed

by Rule 60(b)(1).

Nor is this a case of newly discovered evidence that Ross could not have discovered, with reasonable diligence, in time to move under Fed. R. Civ. P. 59 (made applicable by Fed. R. Bankr. P. 9023) to vacate the order closing the case.  A simple inquiry into the land records would have disclosed the lack of recordation.  Indeed, Ross could have discovered the lack of recordation *before* he filed his no-asset report.

In any event, Rule 60(c) makes Ross's invocation of Rules 60(b)(1) and 60(b)(2) untimely as he did not seek relief from the order closing the case until more than a year after that order was entered.

## IV

In accordance with the foregoing, a judgment follows dismissing this adversary proceeding.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.